2008 UT App 353

**Lawrence BROWN, Marilyn Brown, Joseph Sorenson, and Kathleen Sorenson, individuals, Plaintiffs and Appellants,**

v.

**DIVISION OF WATER RIGHTS of DEPARTMENT OF NATURAL RESOURCES; Jerry D. Olds, in his capacity as the Utah State Engineer; and James A. McIntyre, an individual, Defendants and Appellees.**

No. 20070474–CA.

Court of Appeals of Utah.

Oct. 2, 2008.

Alexander Dushku, Benson L. Hathaway, Peter C. Schofield, and Justin W. Starr, Salt Lake City, for Appellants.

Richard R. Golden and Sarah E. Viola, Salt Lake City, for Appellee McIntyre.

Before THORNE, Associate P.J., BILLINGS, and DAVIS, JJ.

## OPINION

BILLINGS, Judge:

¶1 Plaintiffs Lawrence Brown, Marilyn Brown, Joseph Sorenson, and Kathleen Sorenson appeal the trial court's order dismissing their case against Defendants James A. McIntyre, the Division of Water Rights of the Department of Natural Resources (the Division), and Jerry D. Olds in his capacity as the Utah State Engineer, for lack of standing. We affirm.

## BACKGROUND

¶2 Plaintiffs and McIntyre are neighbors with property along Little Cottonwood Creek. McIntyre has property located on both sides of Little Cottonwood Creek. In

August 2006, McIntyre filed an application with the Division to construct a bridge across the creek to connect the two parts of his property. Plaintiffs submitted an objection to McIntyre's application in September 2006. In October 2006, the Division approved McIntyre's application; Plaintiffs subsequently submitted a request for reconsideration of the Division's approval. The Division denied the request for reconsideration in November 2006.

¶ 3 On December 15, 2006, Plaintiffs filed a Petition for Judicial Review of Informal Administrative Proceedings and Agency Action and Complaint for Injunctive Relief (the Complaint) in the Third District Court, challenging the Division's grant of McIntyre's application. Specifically, Plaintiffs alleged that the bridge McIntyre proposed to build would "alter [Little Cottonwood Creek's] channel, and thereby diminish the natural channel[']s ability to conduct high water flows, heighten the potential for damming, and thus increase the risk of flooding" and the damage caused by flooding in the area where Plaintiffs reside. Plaintiffs claimed that the location of the bridge was "in an area of high flood risk" and that "in the event flooding occur[red] due in whole or in part to the construction of the proposed bridge, the natural [creek] environment [would] be adversely affected and potentially destroyed by the invading flood waters."

¶ 4 In response to the Complaint, McIntyre filed a Motion to Dismiss, claiming that Plaintiffs lacked standing. While McIntyre's Motion to Dismiss was pending, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction. The trial court denied that motion in March 2007. In April 2007, the trial court granted McIntyre's Motion to Dismiss. Plaintiffs now appeal.

## ISSUE AND STANDARD OF REVIEW

▆▆▆ ¶ 5 On appeal, Plaintiffs argue that the trial court erred when it granted McIntyre's Motion to Dismiss for lack of standing. "[T]he question of whether a given individual ... has standing to request a particular [form of] relief is primarily a question of law...." *Washington County Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 18, 82 P.3d 1125 (second alteration in original) (internal quotation marks omitted). Generally, "for purposes of evaluating a motion to dismiss, the facts alleged in the complaint are to be considered as true, with any inferences drawn in favor of the plaintiffs' claims." *Haymond v. Bonneville Billing & Collections, Inc.*, 2004 UT 27, ¶ 5, 89 P.3d 171. However, in this case we look at more than just the statements and allegations made in the complaint because Plaintiffs attached an engineer's report to their complaint. Therefore, we acknowledge that "there may be factual findings that bear on the issue [of standing]," and we review those factual findings "with deference." *Berg v. State*, 2004 UT App 337, ¶ 5, 100 P.3d 261 (internal quotation marks omitted).

## ANALYSIS

▆▆▆ ¶ 6 Under Utah law, a plaintiff "must have standing to invoke the jurisdiction of the court." *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983). "[T]he first and most widely employed standard for establishing standing" is also referred to as the "traditional test for standing." *Morgan*, 2003 UT 58, ¶ 20, 82 P.3d 1125 (internal quotation marks omitted). This test "'requires a plaintiff to show some distinct and palpable injury that gives rise to a personal stake in the outcome of the dispute.'" *Id.* (quoting *National Parks & Conservation Ass'n v. Board of State Lands*, 869 P.2d 909, 913 (Utah 1993)).

▆▆▆ ¶ 7 We use a three-part inquiry to determine whether a party has suffered such a distinct and palpable injury:

> First, the party must assert that it has been or will be "adversely affected by the [challenged] actions." Second, the party must allege a causal relationship "between the injury to the party, the [challenged] actions and the relief requested." Third, the relief requested must be "substantially likely to redress the injury claimed."

*Utah Chapter of the Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 19, 148 P.3d 960 (alterations in original) (quoting *Jenkins*, 675 P.2d at 1149–50). If a party can satisfy all

three parts of this inquiry, then it has standing to pursue its claims. *See id.*

¶ 8 We begin by addressing the first part of this three-part inquiry—whether Plaintiffs have been or will be adversely affected by McIntyre's bridge. To make this determination, we examine whether Plaintiffs' interests are "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted); *see also Sierra Club,* 2006 UT 74, ¶ 20, 148 P.3d 960 (noting that the plaintiff must have " 'a real and personal interest in the dispute' " (quoting *Jenkins,* 675 P.2d at 1150)).

¶ 9 The United States Supreme Court has noted that a particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Lujan,* 504 U.S. at 560, n. 1, 112 S.Ct. 2130. It is clear from the complaint that Plaintiffs in this case have a personal interest in the dispute. They own property along Little Cottonwood Creek where McIntyre has built his bridge. Their property is at risk if there is significant flooding of Little Cottonwood Creek. Thus, Plaintiffs have a personal interest in the construction of McIntyre's bridge.

¶ 10 The requirement that the injury be actual or imminent is more troublesome. "The 'Supreme Court has consistently recognized that threatened rather than actual injury can satisfy ... standing requirements.' " *Harris v. Board of Supervisors,* 366 F.3d 754, 761 (9th Cir.2004) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 160 (4th Cir.2000) (en banc)). However, "when standing is based upon the threat of future injury, a plaintiff must show that the threat of injury is both real and immediate, not conjectural or hypothetical." *Resident Councils of Wash. v. Thompson,* No. C04–1691Z, 2005 WL 1027123, at *3, 2005 U.S. Dist. LEXIS 33630, at *11 (D.Wash. May 2, 2005) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). There is no specific formula for determining when a future threat of injury qualifies as real or immediate. *See id.* Such a determination is

individual and must be determined on a case-by-case basis. *See Nelsen v. King County,* 895 F.2d 1248, 1251 (9th Cir.1990). However, "what a plaintiff must show is not a probabilistic estimate that the general circumstances to which the plaintiff is subject may produce future harm, but rather an individualized showing that *there is a very significant possibility that the future harm will ensue.*" *Id.* at 1250 (emphasis added) (internal quotation marks omitted).

¶ 11 In determining whether Plaintiffs have suffered an actual or imminent harm, we review both Plaintiffs' complaint and the attached engineer's report. In *Berg v. State,* 2004 UT App 337, 100 P.3d 261, this court recognized a need to review "factual findings that bear on the issue [of standing]." *Id.* ¶ 5. In *Berg,* the State filed a motion to dismiss for lack of standing. *See id.* ¶ 3. Attached to the motion was a sworn affidavit from the Utah Attorney General stating specific facts regarding the standing issue. *See id.* The affidavit was reviewed by both the trial court and the appellate court in determining that the plaintiff did not have standing. *See id.* ¶¶ 4, 10. Similarly, we also review certain facts that bear on the standing issue in this case.

¶ 12 We conclude that Plaintiffs' claim is too speculative to amount to an actual or imminent injury. Plaintiffs' complaint makes the following allegations:

19. The approved bridge will ... diminish the stream['s] ability to conduct high water flows and thereby increase risk and danger of flooding, and in the event flooding occurs, the surrounding stream environment will be unnecessarily and adversely affected.

20. Construction of the proposed bridge and access ramps will alter the streams channel, and thereby diminish the natural channel['s] ability to conduct high water flows, heighten the potential for damming, and thereby increase the risk of flooding in the surrounding areas.

21. As observed in the Spring of 1984, the location of the bridge is already in an area of high flood risk. The approved bridge, if constructed, will only enhance the already

high flood risk and danger to ... Plaintiffs' ... properties.

22. In the event flooding occurs due in whole or in part to the construction of the proposed bridge, the natural stream environment will be adversely affected and potentially destroyed by the invading flood waters.

...

24. The [engineer's report] demonstrates that ... [w]ater flow like that experienced in 1984 would flow over, and significantly increase the stress on, the bridge as approved.

25. The [engineer's report] ... demonstrates that if flows similar to those in 1984 are experienced in the stream channel ... the erosion could cause the stream banks to overflow and inundate the first level flood plains on both sides of the stream in the vicinity of the bridge. Such an event will cause significant erosion and damage to ... Plaintiffs[' property].

...

28. Plaintiffs have already observed subsidence of their property in areas close to ... Little Cottonwood Creek.

29. Additionally, Plaintiffs have observed foundation and settling cracks on structures located on the property as a result of the subsidence of the areas near ... Little Cottonwood Creek.

30. The construction of a bridge in this environmentally fragile area will result in irreparable harm and damage to ... Plaintiffs and their property.

¶ 13 These allegations do not rise to the level of demonstrating an actual or imminent injury to Plaintiffs. The majority of the allegations are simply conclusory statements that the bridge will alter Little Cottonwood Creek's natural stream flow and that Plaintiffs will suffer harm if a flood occurs. The complaint simply provides the Plaintiffs' opinions regarding their fears and concerns of a potential future harm.

¶ 14 We acknowledge that the complaint does assert some actual facts suggesting that a flood or high water flows would cause harm to Plaintiffs' property. These facts are supported by the engineer's report and are focused on the Little Cottonwood Creek flooding that occurred in 1984. Indeed, the engineer's report attached to the complaint shows a danger of possible damage to Plaintiffs' property if Little Cottonwood Creek's water flows reach the same levels that they did in 1984. However, the potential dangers are contingent on key, unknown events—an increased water flow or a flood—which are dictated by unknown weather patterns. Essentially, Plaintiffs' injury depends on " 'contingent future events that may not occur as anticipated or indeed may not occur at all.' " *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (quoting 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3532 (2d ed.1984)).[1] As the District of Columbia Circuit held, "[i]t is not enough ... to assert that [the plaintiff] might suffer an injury in the future, or even that [the plaintiff] is likely to suffer an injury at some unknown future time. Such 'someday' injuries are insufficient." *J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 606 (D.C.Cir.1996).

¶ 15 Plaintiffs' complaint provides evidence of Little Cottonwood Creek flooding in 1984. However, the 1984 flood is the only specific evidence of flooding that Plaintiffs allege. That flood occurred over twenty years ago. Plaintiffs have not made any other allegations or offered any other evidence that a similar flood is immediate or at least "certainly impending," *see Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Further, it is unknown what work was done to Little Cottonwood

---

1. We recognize that *Thomas v. Union Carbide Agricultural Products, Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), discusses the requirements for a ripeness challenge. However, "[a ripeness] argument could easily be reformulated in terms of standing.... 'The doctrines of standing and ripeness are closely relat-ed, and in [some] cases ... overlap entirely.' " *Lane v. Stephenson*, No. 96–C–5565, 1996 WL 715535, at \*2 n. 4, 1996 U.S. Dist. LEXIS 18346, at \*8 n. 4 (N.D.Ill.Dec.9, 1996) (second alteration and second omission in original) (quoting *Smith v. Wisconsin Dept. of Agric.*, 23 F.3d 1134, 1141 (7th Cir.1994)).

Creek after the 1984 flood to prevent future flooding in the area. Because Plaintiffs' injuries require this court "to infer what events might transpire to cause [Plaintiffs] harm in the future, the [standing] requirement[s are] not met." *LPA Inc. v. Chao*, 211 F.Supp.2d 160, 164 (D.D.C.2002).[2]

## CONCLUSION

¶ 16 We conclude that although Plaintiffs have demonstrated an individual, particularized interest in the construction of McIntyre's bridge, they have not demonstrated that any potential injury to their property is actual or imminent. The threat of any harm to their property is too speculative because it is contingent on unknown future events. Accordingly, we affirm.

¶ 17 I CONCUR: JAMES Z. DAVIS, Judge.

THORNE, Associate Presiding Judge (dissenting):

¶ 18 I respectfully dissent. Although I do not disagree with the majority's treatment of standing law as it applies to this case, I believe that the district court acted prematurely in determining a lack of standing at the motion to dismiss stage. Plaintiffs' complaint alleges an increased risk of substantial harm to their property as a result of McIntyre's bridge, and in my opinion, that is all that is necessary to survive a motion to dismiss.

¶ 19 " '[S]tanding is a jurisdictional requirement that must be satisfied' before a court may entertain a controversy between two parties." *Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808 (alteration in original) (quoting *Washington County Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 6 n. 2,

82 P.3d 1125). However, even though standing is a prerequisite to a court hearing a matter, that does not always mean that standing can be easily resolved early in the proceedings. Indeed, standing issues may present questions of fact that need to be resolved through the ordinary adversarial process. *Cf. Morgan*, 2003 UT 58, ¶ 23, 82 P.3d 1125 ("Whether the Conservancy District advanced sufficient evidence to establish that its water rights would be enhanced by any forfeiture of the CPB's rights is a *question of fact*." (emphasis added)). In this case, both the degree and likelihood of harm alleged by Plaintiffs constitute such questions of fact.

¶ 20 " 'When determining whether a trial court properly granted a motion to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.' " *Coroles v. Sabey*, 2003 UT App 339, ¶ 2 n. 1, 79 P.3d 974 (quoting *Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895). Thus, the only question we should be considering on appeal is whether Plaintiffs' complaint *alleges* sufficient harm to confer standing, not whether that harm actually exists. I believe that the complaint clearly meets this requirement. The complaint alleges that McIntyre's bridge will cause "immediate and irreparable harm," "increase the risk of flooding in the surrounding areas," and "cause significant erosion and damage to the Plaintiffs and other property owners adjacent to the bridge" if that flooding occurs. Taking these allegations as true, there is no doubt in my mind that Plaintiffs have alleged individualized harm sufficient to confer standing in this matter.

2. Defendants argue on appeal that Plaintiffs' claim for injunctive relief is now moot because the bridge has already been built. Given our decision on the standing issue, we do not need to address this issue. Still, we recognize that Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction prior to the bridge's construction while McIntyre's Motion to Dismiss was being considered. Because Plaintiffs took active measures to prevent the construction of the bridge and because we have the authority to restore the status quo by ordering the bridge removed, Plaintiffs' appeal on that issue is not moot. *See Porter v. Lee*, 328 U.S. 246, 251, 66 S.Ct. 1096, 90 L.Ed. 1199 (1946) ("It has long been established that where a defendant with notice in an injunction proceeding completed the acts sought to be enjoined the court may by mandatory injunction restore the status quo."). Moreover, we note that after Plaintiffs filed their appeal, McIntyre moved this court to dismiss based on grounds of mootness and we denied that motion.

¶ 21 Of course, Plaintiffs still have to establish their alleged facts in order for the district court to ultimately have jurisdiction to consider their complaint. But, that is a matter for trial, or perhaps summary judgment.[1] *Cf. Utah Chapter of Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 28 n. 3, 148 P.3d 960 (describing the procedures employed to determine standing in *Morgan*, 2003 UT 58, 82 P.3d 1125, including a trial at which both sides were permitted to present expert witnesses). It should not have been resolved against Plaintiffs upon a motion to dismiss. Counsel argued as much at the hearing on McIntyre's motion:

> [B]ased on the allegations, Your Honor, at this point, we would respectfully urge that the plaintiffs ought to at least have an opportunity to flush in the facts. Mr. McIntyre ought to have the opportunity to get an engineering report and to see if there are disputes of the fact. And if so, then have a hearing on that issue. And then, Your Honor, then it would be ripe for this court to determine, are you an aggrieved party, or are you not an aggrieved party?

The procedure suggested by Plaintiffs' counsel would have provided an appropriate method of resolving the standing issue, although the trial court may have appropriately decided to proceed along another path.

¶ 22 McIntyre's bridge may or may not present the risk of harm alleged by Plaintiffs. However, Plaintiffs did allege that the bridge will increase the risk of significant damage to their property, and that is sufficient, in my opinion, to survive a motion to dismiss for lack of standing. In granting the motion, the district court improperly weighed the degree of risk alleged by Plaintiffs when it should have simply accepted the allegation of increased risk as true.[2] In my opinion, this was error by the district court, and I would reverse the dismissal order and remand this matter for further proceedings. Accordingly, I respectfully dissent from the majority opinion.

---

1. Arguably, the district court converted McIntyre's motion to dismiss into a motion for summary judgment by considering materials outside of the complaint. *See, e.g., Salmon v. Davis County*, 916 P.2d 890, 897 (Utah 1996) (" '[L]abels do not control, [and] where the trial court, in effect, properly treats such a Rule 12(b)(6) motion as one for summary judgment but erroneously characterizes its action as a ruling on a motion to dismiss for failure to state a claim, the ruling will be reviewed as if it had been a ruling on a motion for summary judgment.' " (citation omitted)). The majority opinion does not address this aspect of the district court's decision, and I will not either. I do note, however, that if we were to treat this as a summary judgment I would still be inclined to reverse the district court based on Plaintiffs' request to be allowed to "flush in the facts." *See, e.g., Oakwood Vill. LLC*

*v. Albertsons, Inc.*, 2004 UT 101, ¶ 12, 104 P.3d 1226 (stating that a motion to dismiss "shall be converted into one for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court' and all parties receive '*reasonable opportunity to present all material made pertinent to such a motion by Rule 56.*' " (emphasis added) (quoting Utah R. Civ. P. 12(b))).

2. To the extent that Plaintiffs' complaint lacks clarity as to the degree of risk that it is asserting, I believe that it is reasonable to infer that they are alleging a substantial risk sufficient to confer standing in this matter. Plaintiffs are entitled to such reasonable inferences when facing a motion to dismiss. *See Coroles v. Sabey*, 2003 UT App 339, ¶ 2 n. 1, 79 P.3d 974.