2010 UT 14

Lawrence BROWN, Marilyn Brown, Joseph Sorenson, and Kathleen Sorenson, Plaintiffs and Petitioners,

v.

The DIVISION OF WATER RIGHTS OF the DEPARTMENT OF NATURAL RESOURCES of the State of Utah; Jerry D. Olds, in his capacity as the Utah State Engineer; and James A. McIntyre, Defendants and Respondents.

No. 20080995.

Supreme Court of Utah.

March 9, 2010.

Benson L. Hathaway, Alexander Dushku, Peter C. Schofield, Justin W. Starr, Salt Lake City, for plaintiffs.

Mark L. Shurtleff, Att'y Gen., Norman K. Johnson, Richard K. Rathbun, Julie I.

Valdes, Asst. Att'ys Gen., Salt Lake City, for defendants the Division of Water Rights and Jerry D. Olds.

James A. McIntyre, Richard R. Golden, Sarah E. Viola, Salt Lake City, for defendant James A. McIntyre.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 This case comes to us on writ of certiorari and presents important issues regarding the interaction between our substantive standing requirements and the standard of review applicable at various procedural stages of litigation. Lawrence and Marilyn Brown, together with Joseph and Kathleen Sorensen (collectively, the "Browns"), filed this action to challenge James McIntyre's construction of a bridge over a part of Little Cottonwood Creek that bisects his property. McIntyre filed a motion to dismiss for lack of standing, which the district court granted. The court of appeals subsequently affirmed. Because we conclude that the Browns' complaint satisfies our traditional test for standing, we reverse.

## BACKGROUND

¶ 2 McIntyre owns real property in Murray, Utah, that is bisected by Little Cottonwood Creek. The Browns are the owners of adjoining property that, while not bordering the creek, sits atop the escarpment created by the creek channel. McIntyre lives on the east side of the creek and has historically accessed the western portion of his property by fording the creek. In order to enable access to the west side of his property during times of high water flow, he decided to build a bridge connecting the eastern and western portions of his property.

¶ 3 On August 21, 2006, McIntyre applied to the Division of Water Rights (the "Division") for a permit to alter a natural stream channel, with the ultimate goal of building a bridge across the creek. The Browns object-ed to McIntyre's application, contending that (1) the application was technically deficient, (2) the bridge would unreasonably diminish the creek's ability to conduct high water flow, and (3) the bridge would adversely impact the natural stream environment. Despite the Browns' objections, the Division approved the permit on October 11, 2006.

¶ 4 After the Division denied the Browns' request for reconsideration, the Browns petitioned the district court for judicial review of the Division's decision. The Browns combined with their petition a complaint seeking preliminary and permanent injunctions to prevent McIntyre from constructing the bridge.[1] In their complaint, the Browns alleged that the bridge would "diminish the [stream's] ability to conduct high water flows ... and thereby increase the risk and danger of flooding." The Browns further alleged that increased flooding would lead to erosion of the stream bank that would result in subsidence of the soil, damaging the structures located on their property. They also attached a privately commissioned engineering report (the "SECOR Report") in support of their allegations. This report described in detail the geological and hydrological conditions of the stream and concluded that it was "very likely" that McIntyre's bridge would result in increased erosion, which the Browns alleged would result in harm to the structures on their property.

¶ 5 McIntyre filed a motion to dismiss the Browns' complaint, arguing that (1) the Browns lacked standing as to both their administrative and injunctive claims because they had failed to allege a distinct and palpable injury, and (2) their claim for injunctive relief failed on its merits as a matter of law. While McIntyre's motion was pending before the district court, he began construction on the bridge. Upon receiving notice that McIntyre had begun construction, the Browns sought a temporary restraining order prohibiting him from proceeding. The district court denied the Browns' motion after an informal in camera hearing. Subsequently, on April 20, 2007, the court issued a

1. The Browns' combined petition for administrative review and complaint for injunctive relief are throughout the remainder of this opinion referred to as their "complaint."

memorandum decision granting McIntyre's motion to dismiss for lack of standing.

¶ 6 A divided panel of the court of appeals affirmed the district court's dismissal, determining that the Browns had failed to allege an injury sufficient to confer standing because they had not adequately demonstrated that future harm was "imminent" or " 'certainly impending.' " [2] While the court acknowledged that the Browns' complaint had asserted "some actual facts suggesting that a flood or high water flows would cause harm to [their] property," the court found these allegations insufficient since they were "contingent on key, unknown events ... dictated by unknown weather patterns ... 'that may not occur as anticipated or indeed may not occur at all.' " [3]

¶ 7 Judge Thorne dissented, arguing that while the majority panel had correctly articulated the substantive standard for standing, it had erred by failing to accept the truth of the Browns' allegations. On a motion to dismiss, Judge Thorne contended, "the only question [the court] should be considering ... is whether [the] complaint *alleges* sufficient harm to confer standing, not whether that harm actually exists." [4]

¶ 8 We granted certiorari and have jurisdiction pursuant to Utah Code section 78A–3–102(3)(a).

## STANDARD OF REVIEW

■ ¶ 9 When a case is before us on certiorari review, we review the decision of the court of appeals rather than the decision of the district court.[5] We accord no deference to the court of appeals' decision, reviewing it de novo to determine whether the court of appeals correctly applied the appropriate standard of review to the district court's determinations.[6]

■ ¶ 10 A district court should grant a motion to dismiss only when, assuming the truth of the allegations in the complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief.[7]

## ANALYSIS

¶ 11 This case presents us with an opportunity to clarify both (1) the interaction between challenges to standing and the differing burdens of proof applicable at different stages of litigation, and (2) the substantive requirements for standing in cases based on allegations of future injury. We begin by discussing the appropriate standard of review for challenges to a plaintiff's standing and then set forth the requirements of our standing law in "future injury" cases. We conclude by determining whether the court of appeals correctly applied these standards in its review of the district court's decision.

I. ALTHOUGH STANDING IS A JURISDICTIONAL REQUIREMENT UNDER WHICH THE PLAINTIFF BEARS THE BURDEN OF PROOF, THE PLAINTIFF'S BURDEN CORRESPONDS TO THE BURDEN ASSOCIATED WITH DISPOSITIVE MOTIONS AT VARIOUS STAGES OF LITIGATION

■ ¶ 12 As to federal courts, standing is a constitutional requirement, derived from Article III of the United States Constitution, which limits the judicial authority of the federal courts to " 'actual cases or controversies.' " [8] Although the Utah Constitution in-

---

**2.** *Brown v. Div. of Water Rights*, 2008 UT App 353, ¶¶ 12, 15, 195 P.3d 933 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)).

**3.** *Id.* ¶ 14 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).

**4.** *Id.* ¶ 20 (Thorne, J., dissenting).

**5.** *Collins v. Sandy City Bd. of Adjustment*, 2002 UT 77, ¶ 11, 52 P.3d 1267.

**6.** *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

**7.** *See Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶¶ 8–9, 104 P.3d 1226.

**8.** *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)).

cludes no similar express limitation, we have held it nevertheless mandates certain standing requirements, which emanate from the principle of separation of powers.[9] Accordingly, in Utah, as in the federal system, standing is a jurisdictional requirement.[10]

¶ 13 Jurisdictional challenges, in contrast to challenges to the merits of a plaintiff's claims, raise fundamental questions regarding a court's basic authority over the dispute. And a challenge to the subject matter jurisdiction of the court is unique among jurisdictional challenges in that it is not only given its own procedural vehicle—rule 12(b)(1) [11]—but can be raised at any time, including for the first time on appeal.[12]

¶ 14 But despite the fundamental nature of standing as a jurisdictional prerequisite to adjudication, requiring a plaintiff to provide full proof of standing at the moment of challenge, regardless of the stage of litigation, risks creating premature and unduly burdensome "mini-trials" on standing at times when the precise contours of the dispute are just developing. And because issues relevant to the standing inquiry, such as the extent or likelihood of an injury and the causal link between the alleged injury and the defendant's conduct, are often bound up with the merits of the plaintiff's case, requiring that a plaintiff prove standing immediately upon challenge would impose a burden on the plaintiff inconsistent with the burden imposed regarding the merits of his claims. Faced with such a burden, plaintiffs who are not yet required to prove the merits of their claims could nevertheless have their claims dismissed for failure to prove standing prior to discovery. We have rejected this approach in the past, with regard to both standing and other jurisdictional challenges.[13] We find the United States Supreme Court's analysis helpful in explaining the appropriate approach:

> The party invoking ... jurisdiction bears the burden of establishing these elements [i.e., the elements of standing]. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by

9. *See Jenkins v. Swan*, 675 P.2d 1145, 1149 (Utah 1983) ("Unlike the federal system, the judicial power of the state of Utah is not constitutionally restricted by the language of Article III of the United States Constitution requiring 'cases' and 'controversies,' since no similar requirement exists in the Utah Constitution.... However, the requirement that the plaintiff have a personal stake in the outcome of a legal dispute is rooted in the historical and constitutional role of the judiciary in Utah....

  Inherent in the tripartite allocation of governmental powers is the historical and pragmatic conviction that particular disputes are most amenable to resolution in particular forums. The requirement that a plaintiff have a personal stake in the outcome of a dispute is intended to confine the courts to a role consistent with the separation of powers, and to limit the jurisdiction of the courts to those disputes which are most efficiently and effectively resolved through the judicial process.").

10. *Heath Tecna Corp. v. Sound Sys. Int'l, Inc.*, 588 P.2d 169, 170 (Utah 1978).

11. Utah R. Civ. P. 12(b) ("Every defense, in law or fact, to claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter....").

12. *See Harris v. Springville City*, 712 P.2d 188, 190 (Utah 1986); *see also* Utah R. Civ. P. 12(h)(2) ("[W]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

13. *See, e.g., Utah Chapter of the Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 32, 148 P.3d 960 (standing); *Anderson v. Am. Soc'y of Plastic & Reconstructive Surgeons*, 807 P.2d 825, 826–27 (Utah 1990) (personal jurisdiction).

affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.[14]

¶ 15 Accordingly, we now make clear that, although a challenge to standing is jurisdictional and may be brought at any stage of the litigation, such a challenge is to be evaluated under the standard used for a dispositive motion at the relevant stage of litigation.

## II. THE BROWNS HAVE ADEQUATELY MET THEIR BURDEN TO SHOW STANDING AT THIS STAGE OF THE LITIGATION BECAUSE THEIR ALLEGATIONS ESTABLISH A REASONABLE PROBABILITY OF FUTURE INJURY

¶ 16 Because McIntyre's challenge to the Browns' standing was brought prior to discovery, the Browns' burden with respect to standing is identical to the burden they would bear on their substantive claim when facing a motion to dismiss for failure to state a claim upon which relief may be granted. Accordingly, the Browns' claims will survive McIntyre's motion so long as their allegations, taken as true, together with all reasonable inferences therefrom, satisfy the requirements of our standing test.[15] We begin by clarifying the nature of the injury requirement of our standing jurisprudence in this case. We then determine whether the court of appeals was correct in affirming the district court's determination that the Browns lack standing to bring their claims.

### A. A Plaintiff Satisfies Our Standing Requirements by Demonstrating That There Is a Reasonable Probability of a Future Injury

¶ 17 The court of appeals referred almost exclusively to federal case law in formulating the standing requirements by which it judged the sufficiency of the Browns' complaint.[16] In doing so, it did not give adequate consideration to key differences between Utah and federal standing law that bear directly on this case. Although our standing requirements and the federal standing requirements are similar in that they contain the same three basic elements—injury, causation, and redressability—they are not identical.[17] Indeed, the practical, historical, and state constitutional constraints that set the outer bounds of our standing jurisprudence are, as noted above, significantly different from the constraints imposed by the federal constitution.

¶ 18 Specifically, the court of appeals' citation to federal standing law for the proposition that an alleged future injury must be "actual or imminent" in order to confer standing is in conflict with our recent pronouncements on the issue. In *Cedar Mountain Environmental, Inc. v. Tooele County,* we reiterated our rule that a plaintiff may allege an "actual or *potential*" injury to satisfy the personal injury element of our standing requirements.[18] In other words, we have made clear that an imminent injury is not required.

¶ 19 Yet we have never attempted to describe what qualifies as a "potential" injury that will satisfy our standing requirements in future injury cases. We take the opportunity to do so now. To establish standing based on allegations of a future injury, a plaintiff

14. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted).

15. *See Oakwood Vill. LLC v. Albertsons, Inc.,* 2004 UT 101, ¶¶ 8–9, 104 P.3d 1226.

16. *See Brown v. Div. of Water Rights,* 2008 UT App 353, ¶¶ 9–10, 14–15, 195 P.3d 933.

17. *Compare Jenkins v. Swan,* 675 P.2d 1145, 1150 (Utah 1983) (requiring proof of a causal relationship between defendant's action and plaintiff's alleged injury, and requiring that the "relief requested is substantially likely to re-

dress" the alleged injury) *with Hein v. Freedom From Religion Found., Inc.,* 551 U.S. 587, 598, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007) (articulating the federal standing requirements: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." (internal quotation marks omitted)).

18. 2009 UT 48, ¶ 9, 214 P.3d 95 (emphasis added) (citing *Utah Chapter of the Sierra Club v. Utah Air Quality Bd.,* 2006 UT 74, ¶ 23, 148 P.3d 960).

need not necessarily show that the alleged future injury is imminent, certainly impending, or even that its occurrence is more likely than not. Instead, a plaintiff seeking standing on the basis of a claim of future injury must, at a minimum, set forth allegations establishing that a reasonable probability, as opposed to a mere possibility, of future injury exists.

¶ 20 Although the phrase "reasonable probability" defies precise definition, it provides meaningful guidance. As noted above, a reasonable probability of future injury fits somewhere in between a mere possibility of future injury, on the one hand, and an imminent injury, on the other. When an alleged future injury falls within these two extremes, the determination of whether there is a "reasonable probability" of injury is an equitable one, which encompasses several different considerations, including the chance that the alleged injury will actually occur, the potential magnitude of the alleged injury, and the relative burdens that such an injury (or the mitigation thereof) would impose on the parties.

¶ 21 At the pleading stage of litigation, plaintiffs may satisfy our standing requirements merely by alleging that there is a reasonable probability that they will be injured by the defendant's conduct, so long as the complaint contains adequate factual context to satisfy our notice pleading requirements. For purposes of a motion to dismiss, an allegation that there is a reasonable probability of future injury will be assumed to " 'embrace those specific facts that are necessary to support the claim.' " [19] But at subsequent stages of litigation, or at the pleading stage in the event that a plaintiff does not expressly allege a reasonable probability of future injury, the court must determine whether the plaintiff's allegations establish that a reasonable probability of future injury exists. Having set out the requirements of our standing law, we now evaluate the court of appeals' dismissal of the Browns' complaint in this case.

## B. The Allegations in the Browns' Complaint, Taken as True, Establish a Reasonable Probability of Future Injury Due to McIntyre's Bridge

¶ 22 While the court of appeals acknowledged that the Browns had alleged that, when flooding occurs, they would suffer harm from McIntyre's bridge, the court nonetheless affirmed the district court's dismissal of the Browns' case on the ground that the alleged injury was too speculative to satisfy our standing requirements. The court of appeals found that, in order to obtain standing based on allegations of a future harm, the plaintiff must show that their alleged injury is "imminent" or "certainly impending." [20] Because it found that the Browns' alleged injury depended on " 'contingent future events that may not occur as anticipated or indeed may not occur at all,' " it determined that the Browns lacked standing.[21] In so doing, it erred.

¶ 23 As discussed above, our standing law requires only that a plaintiff show a reasonable probability of future injury; a plaintiff is not required to prove that his alleged injury is imminent or certain. And in this case, the Browns' complaint satisfies our injury requirement for purposes of a challenge to standing at the pleading stage of litigation.

¶ 24 The Browns' complaint, read in light of the attached SECOR Report, alleges that, when flooding occurs, it is very likely that McIntyre's bridge would cause a damming effect on the creek, resulting in increased erosion of the stream bank and corresponding reduction in lateral support to the escarpment atop which their property lies. Although the Browns do not allege that they are certain to be injured when flooding occurs, certainty of future injury is not required to obtain standing. The fact that an injury ultimately may not occur as anticipated, or at all, does not preclude standing if there is a reasonable probability that it will occur.

19. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

20. *Brown*, 2008 UT App 353, ¶¶ 10, 15, 195 P.3d 933.

21. *Id.* ¶ 14 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).

¶ 25 Here, the Browns have alleged that it is very likely they will be injured if a flood occurs. According to their allegations, a reasonable probability of injury, as we have defined it above, clearly exists. Taking the Browns' allegations as true, which we must for purposes of McIntyre's motion to dismiss, the Browns have established that there is more than a "mere possibility" of injury. They have set forth facts and express allegations demonstrating that their alleged injury is likely. This satisfies our reasonable probability standard at this stage of the litigation. Accordingly, we hold that the court of appeals erred by affirming, on the ground that the Browns' alleged injury was not "immediate" or "certainly impending," the district court's dismissal of the Browns' complaint for lack of standing.[22]

## CONCLUSION

¶ 26 The court of appeals erred in affirming the district court's dismissal of the Browns' complaint for lack of standing. Taken as true, the allegations in the Browns' complaint establish that there is a reasonable probability that the Browns will be injured as a result of McIntyre's bridge. Accordingly, the Browns' complaint satisfies our standing requirements, and we reverse the district court's dismissal and remand for proceedings consistent with this opinion.

¶ 27 Justice WILKINS, Justice PARRISH, Justice NEHRING and Judge MORTENSEN concur in Associate Chief Justice DURRANT'S opinion.

¶ 28 Having disqualified herself, Chief Justice DURHAM does not participate herein; District Judge DAVID MORTENSEN sat.

---

**22.** McIntyre makes the additional argument that the Browns lack standing to bring their administrative claim because the permit has expired and relief from this court could not redress the Browns' alleged injuries. We initially note that, since standing is evaluated at the time an action is brought, *Cedar Mountain Envtl., Inc.*, 2009 UT 48, ¶ 10, 214 P.3d 95, McIntyre's argument fails. At the time the Browns filed their complaint, McIntyre had not yet begun construction on the bridge and the permit was still in force. To the extent that the substance of McIntyre's contention is an assertion that the Browns' administrative claim is now moot given the permit's expiration, we decline to reach this issue because the impact of the permit's possible expiration has not been adequately briefed to this court. *See State v. Lee*, 2006 UT 5, ¶ 22, 128 P.3d 1179.