*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2014 UT 6**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

CHRISTOPHER CARLTON,
*Appellant,*

*v.*

SHALANDA BROWN and
THE ADOPTION CENTER OF CHOICE, INC.,
*Appellees.*

No. 20120268
Filed February 25, 2014

Fourth District, Provo Dep't
The Honorable Steven L. Hansen
No. 114400552

Attorneys:

Wesley D. Hutchins, West Jordan, for appellant

Larry S. Jenkins, Lance D. Rich, Salt Lake City, for appellees

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, JUSTICE LEE, and JUDGE ROTH joined.

Having recused herself, JUSTICE DURHAM
does not participate herein; Court of Appeals
JUDGE STEPHEN L. ROTH sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1    In this case, Christopher Carlton asks us to once again
consider both the constitutionality of the Utah Adoption Act (Act)
as well as the extent of the rights it affords to putative fathers who
wish to contest adoptions in Utah. Mr. Carlton argues first that
the Act is unconstitutional, both facially and as applied to him,
and second, that the district court erred when, based on a lack of

standing, it dismissed his Amended Verified Petition to Establish Paternity, which included his constitutional challenges to the Act as well as numerous tort claims. For the reasons set forth below, we affirm in part and reverse in part.

¶2    First, although we disagree with the district court's reasoning regarding Mr. Carlton's lack of standing to assert the constitutional claims, given the current state of the pleadings we would ultimately reach the same conclusion, albeit for different reasons. Nevertheless, because we also conclude that it was error for the district court to deny Mr. Carlton leave to amend his petition—which would have cured the standing defects identified below—we conclude that the district court's dismissal of Mr. Carlton's constitutional claims was also erroneous. Accordingly, we reverse the district court's dismissal of Mr. Carlton's constitutional claims and on remand we instruct the district court to allow Mr. Carlton to amend his petition.

¶3    Second, we affirm the district court's dismissal of Mr. Carlton's tort claims due to his failure to state a claim upon which relief could be granted, with the exception of one of his claims for intentional infliction of emotional distress. Mr. Carlton asserted an IIED claim against both Shalanda Brown and The Adoption Center of Choice, Inc. (Adoption Center). As to the former, we affirm the district court's dismissal due to inadequate service of process. But as to the latter, we reverse because the district court's primary reason for dismissing this claim—Mr. Carlton's failure to establish parental rights under the Act—turns on the outcome of the constitutional issues that were erroneously dismissed by the district court. Accordingly, we remand this case to the district court for further proceedings consistent with this opinion.

## BACKGROUND

¶4 Mr. Carlton and Ms. Brown are both residents of Pennsylvania and have never been married. In 2009, Mr. Carlton and Ms. Brown were involved in a romantic relationship that resulted in Ms. Brown becoming pregnant. The relationship appears to have continued until May 2010 when, just four weeks prior to her delivery date, Ms. Brown mysteriously left Mr. Carlton without any notification or indication as to her whereabouts. Despite the close proximity to her due date, Mr. Carlton did not take any action in either Utah or Pennsylvania to protect his parental rights to the unborn child.

¶5 Unbeknownst to Mr. Carlton, Ms. Brown had traveled to Utah where she gave birth to a baby girl on June 24, 2010. On June 26, 2010, Ms. Brown relinquished her parental rights to Adoption Center. That same day, Ms. Brown also executed a Birth Father Affidavit wherein she stated that she was unmarried and refused to identify the birth father. Instead, she stated that the birth father had been abusive towards her and had tried to use the child as a tool to keep her in a relationship with him.

¶6 After giving birth, Ms. Brown returned to Pennsylvania and allegedly tried to "rekindle" her relationship with Mr. Carlton. But when Mr. Carlton asked Ms. Brown about the child's whereabouts, she informed him that the child was a boy and that he had died. Aggrieved, Mr. Carlton inquired about the location of the child's grave, but Ms. Brown refused to disclose it, and when Mr. Carlton continued to press this inquiry, Ms. Brown sued him for harassment.[1] It is undisputed that these communications occurred after Ms. Brown had already relinquished her parental rights to Adoption Center.

¶7 Meanwhile, on June 29, 2010, and July 20, 2010, Adoption Center requested and received verifications from the Utah Office of Vital Records and Statistics confirming that no putative father was registered with respect to the child. Adoption Center also confirmed that, as of October 15, 2010, the Pennsylvania Department of Public Welfare had not received an acknowledgement or claim of paternity. Consequently, Adoption Center commenced adoption proceedings for the child.

¶8 Once it became apparent that he was not going to get any information from Ms. Brown concerning the child, Mr. Carlton filed a paternity action in Pennsylvania on November 5, 2010. Mr. Carlton's action was sent to mediation, and on November 23, 2010, Ms. Brown "broke down" and informed Mr. Carlton that the child was actually a girl, that she was still alive, and that she had been given up for adoption in Utah. That same day, the Pennsylvania court dismissed Mr. Carlton's action for lack of jurisdiction.

---

[1] The case was ultimately dismissed on the grounds that there was a legitimate basis for these communications and that therefore they could not be classified as "harassment" as a matter of law.

¶9    Back in Utah, the adoption proceedings for the child were finalized on December 29, 2010. It is undisputed that, as of this date, no paternity action was pending in any state.

¶10 Mr. Carlton then hired local counsel in an attempt to intervene in the adoption proceedings. Counsel prepared a motion to intervene in January 2011 but could not identify the proper case in which to file the motion. Consequently, Mr. Carlton began seeking replacement counsel and hired current counsel in March 2011. That counsel immediately filed a Verified Petition to Establish Paternity (Petition) for Mr. Carlton on March 8, 2011.

¶11 Mr. Carlton amended his Petition on May 2, 2011 (Amended Petition) in order to add Adoption Center as a party. He also added the following claims to the Amended Petition: (1) a request to set aside the adoption; (2) constitutional challenges to the Act; (3) tort claims against both Adoption Center and Ms. Brown for fraud, tortious interference with parental rights, unlawful activity, civil conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress; and (4) a request for declaratory relief. Mr. Carlton admits that Ms. Brown has been served only with the Petition, not the Amended Petition, and that she has "not [been] involved in these proceedings."

¶12 In response to the Amended Petition, Adoption Center filed a Motion to Dismiss or, Alternatively, for Summary Judgment (Motion) on May 24, 2011. Mr. Carlton opposed the Motion. Additionally, he filed motions for leave to amend the Amended Petition and for a rule 56(f) continuance. The district court conducted a hearing on all of these motions on November 14, 2011, and entered its order granting Adoption Center's Motion and dismissing all of Mr. Carlton's motions, as well as his Amended Petition, on February 3, 2012. Mr. Carlton timely appealed. As this case was certified to us by the Court of Appeals, we have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

## STANDARD OF REVIEW

¶13 "A district court's grant of a motion to dismiss based upon the allegations in the plaintiff's complaint[] presents a

4

question of law that we review for correctness."[2] Additionally, "[c]onstitutional issues, including questions regarding due process, are questions of law that we review for correctness."[3] Finally, "[w]e apply an abuse of discretion standard in reviewing the denial of a rule 56(f) motion" and a motion for leave to amend, "and overturn . . . only if the denial of the motion exceed[s] the limits of reasonability."[4]

## ANALYSIS

¶14 In his Amended Petition, Mr. Carlton raised several constitutional challenges to the Act based primarily on alleged violations of both state and federal guarantees to due process and equal protection. He also asserted six tort claims against Ms. Brown and Adoption Center. The district court dismissed all of these claims on the ground that Mr. Carlton lacked standing to assert them, or, in the alternative, that he had failed to state a claim upon which relief could be granted.[5] The district court also

---

[2] *Osguthorpe v. Wolf Mountain Resorts, L.C.*, 2010 UT 29, ¶ 10, 232 P.3d 999 (alteration in original) (internal quotation marks omitted).

[3] *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 47, 299 P.3d 990 (internal quotation marks omitted).

[4] *Petersen v. Riverton City*, 2010 UT 58, ¶ 25, 243 P.3d 1261 (third alteration in original) (internal quotation marks omitted); *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 15, 243 P.3d 1275 ("We review a district court's denial of leave to amend for an abuse of discretion.").

[5] The district court's alternative holding actually treated Adoption Center's Motion to Dismiss as a motion for summary judgment pursuant to rule 56 of the Utah Rules of Civil Procedure. And in granting the motion, the district court expressly dismissed Mr. Carlton's claims with prejudice. This was error, however, because the district court did not give the parties notice of the conversion, nor did it allow the parties to supplement the record under rule 56. *Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 12, 104 P.3d 1226 (observing that "[r]ule 12(b) mandates that a motion to dismiss shall be converted into one for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court' and all parties

(continued…)

dismissed Mr. Carlton's Motion for Leave to File Second Amended Petition and for a rule 56(f) continuance because it reasoned that, given Mr. Carlton's lack of standing, both motions would be futile. Mr. Carlton argues that both of these conclusions were erroneous.

¶15 Although we disagree with the district court's reasoning regarding Mr. Carlton's lack of standing to assert the constitutional claims, we agree with its ultimate conclusion given the current state of the pleadings. But because Mr. Carlton's proposed amendment to his petition would have cured these defects, and because we conclude that his motion to amend was improperly denied by the district court, we hold that the district court's dismissal of the constitutional claims was also erroneous. Accordingly, we reverse the district court's dismissal of the constitutional claims and remand this case with the instruction that Mr. Carlton be granted leave to amend his petition.

¶16 With respect to the tort claims, we agree with the district court's decision to dismiss these claims on the ground that Mr. Carlton has failed to state a claim upon which relief could be granted, with the exception of Mr. Carlton's claims for intentional infliction of emotional distress against both Ms. Brown and

---

receive '*reasonable opportunity to present all material made pertinent to such a motion by Rule 56*'" (emphasis added) (quoting UTAH R. CIV. P. 12(b))). In fact, the district court expressly denied Mr. Carlton's request to submit additional evidence pursuant to rule 56. Accordingly, we review the district court's alternative holding under the rule 12(b)(6) standard, and affirm only if "without considering material outside the complaint, we conclude that [Mr. Carlton has] failed to state a claim upon which relief can be granted." *Tuttle v. Olds*, 2007 UT App 10, ¶ 10, 155 P.3d 893. We will also specifically indicate on a claim-by-claim basis whether we are affirming the district court's dismissal with or without prejudice, recognizing the general rule that "dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint" except in situations where "it appears to a certainty that plaintiff cannot state a claim," in which case dismissal with prejudice is appropriate. *Alvarez v. Galetka*, 933 P.2d 987, 991 (Utah 1997) (internal quotation marks omitted).

Adoption Center. Because we conclude that Ms. Brown was not properly served with the Amended Petition, we affirm the district court's dismissal of the claim on that ground. But with respect to Adoption Center, we conclude that the district court's reason for dismissing this claim—Mr. Carlton's failure to establish parental rights to the child—is inadequate, since the question of whether Mr. Carlton actually so failed depends upon the outcome of the constitutional challenges that were also erroneously dismissed by the district court. Accordingly, we reverse the district court's dismissal of this claim and remand this case for further proceedings consistent with this opinion.

## I. INADEQUATE BRIEFING

¶17 Before turning to the issues raised by Mr. Carlton's appeal, we first consider Adoption Center's suggestion that we "either disregard portions of [Mr. Carlton's brief] or strike the brief in its entirety, and award attorney fees as appropriate."

¶18 "Under our rules of appellate procedure, we need not address briefs that fail to comply with rule 24. Specifically, rule 24(k) states that [b]riefs which are not in compliance may be disregarded or stricken, on motion or sua sponte by the court. And we have discretion to not address an inadequately briefed argument."[6] While we recognize that adoption proceedings are extremely time-sensitive, we take this opportunity to reemphasize the fact that "this court is not a depository in which the appealing party may dump the burden of argument and research."[7] Indeed, it is the responsibility of counsel to include "the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on."[8] Furthermore, simply providing "bald citation[s] to authority" is not sufficient to discharge this

---

[6] *Broderick v. Apartment Mgmt. Consultants, L.L.C.*, 2012 UT 17, ¶ 11, 279 P.3d 391 (alteration in original) (internal quotation marks omitted).

[7] *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) (internal quotation marks omitted).

[8] UTAH R. APP. P. 24(a)(9).

responsibility.[9] Rather, counsel must both develop and provide "reasoned analysis based on that authority."[10]

¶19  In this case, Mr. Carlton's brief was confusing and largely unhelpful, due mainly to the fact that he devoted over thirty pages to a summary of the "facts" of the case, which included a lengthy summary of irrelevant telephone conversations that occurred between counsel's wife, Adoption Center, and two other adoption agencies in Utah that are not parties to this case. Having spent the majority of his page allotment on such an endeavor, Mr. Carlton was then forced to discuss five constitutional challenges to the Act, six different tort claims (including a claim for fraud, which must be pled with particularity[11]), and the district court's dismissal of his motion for leave to amend and motion for a rule 56(f) continuance in just twenty-seven pages.

¶20  As a result, most of Mr. Carlton's arguments were not well developed, if they were developed at all. For instance, Mr. Carlton failed to cite *any* case law from *any* jurisdiction in order to set forth the elements of, or the legal standards for, his claims for fraud, tortious interference with parental rights, pattern of unlawful activity, civil conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, or declaratory relief. Where cases are cited, there is no analysis of those cases, nor any reasoned application of those cases to the facts of this case. Furthermore, in areas where there are cases that are directly on point (e.g., claims for violation of due process and equal protection), Mr. Carlton makes no attempt to distinguish them. Instead, he simply recognizes their existence and then asserts that "such cases should be overturned" without arguing why.

---

[9] *Thomas*, 961 P.2d at 305.

[10] *Id.*

[11] UTAH R. CIV. P. 9(b); *Williams v. State Farm Ins. Co.*, 656 P.2d 966, 971 (Utah 1982) (stating that the relevant surrounding facts for a fraud claim "must be set forth with sufficient particularity to show what facts are claimed to constitute such charges" (internal quotation marks omitted)).

¶21 Due to his failure to conform to the requirements of rule 24 of the Utah Rules of Appellate Procedure, we refuse to address many of the arguments raised in Mr. Carlton's brief. Arguments that were inadequately briefed—and accordingly disregarded—are noted specifically below. We decline, however, to accept Adoption Center's invitation to disregard Mr. Carlton's entire brief.

## II. THE DISTRICT COURT'S REASONS FOR DISMISSING MR. CARLTON'S CLAIMS DUE TO A LACK OF STANDING WERE ERRONEOUS

¶22 The district court's primary reason for granting Adoption Center's Motion to Dismiss was that it believed Mr. Carlton lacked standing to assert both the constitutional and tort claims that were set forth in his Amended Petition. Mr. Carlton argues that this conclusion was erroneous. While we agree with Mr. Carlton that the district court's reasons for finding a lack of standing were faulty, we nevertheless agree with its conclusion that Mr. Carlton does, in fact, lack standing to assert these claims, as discussed in the next section.

¶23 Utah's standing requirements are similar to the federal court system "in that they contain the same three basic elements—injury, causation, and redressability."[12] And although there are a few differences between our state courts and the federal system,[13] these differences are irrelevant here. In essence, Mr. Carlton claims that the Act deprived him of his constitutional right to a meaningful opportunity to develop a relationship with the child and that he was damaged by the allegedly tortious conduct of

---

[12] *Brown v. Dep't. of Natural Res.*, 2010 UT 14, ¶ 17, 228 P.3d 747.

[13] *See id.* ¶ 17 (explaining that "[a]lthough our standing requirements and the federal standing requirements are similar . . . they are not identical"); *Cedar Mountain Envtl., Inc. v. Tooele Cnty.*, 2009 UT 48, ¶ 9, 214 P.3d 95 (reiterating that a plaintiff can maintain standing by asserting an "actual or *potential*" injury (emphasis added)). Federal law, in contrast, requires "actual" injury. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (stating that in order to have Article III standing, the injury "must be concrete, particularized, and actual or imminent" (internal quotation marks omitted)).

Adoption Center and Ms. Brown.[14] Therefore, he asked that the district court strike down the Act on constitutional grounds and award him damages against Adoption Center and Ms. Brown in tort.

¶24 With respect to the constitutional claims, however, the district court reasoned that "because Carlton never established parental rights to the child [by complying with the Act], he lacks standing to raise constitutional arguments or otherwise contest the adoption." In other words, the district court concluded that Mr. Carlton lacked standing to challenge the Act because he did not have any rights to the child in the first place (due to his failure to comply with the Act) and therefore could not allege an injury.

¶25 This argument fails due to circularity and was therefore erroneous. If a plaintiff wishes to challenge the constitutionality of a statute and has adequately shown harm, causation, and redressability, the allegedly unconstitutional statute cannot then be used as grounds for denying that plaintiff standing. For if it could be so utilized, it would be impossible to raise a constitutional challenge to any statute, no matter how unconstitutional, provided that the statute itself denied standing to putative plaintiffs who wish to challenge it. Therefore, we conclude that the district court erred in dismissing Mr. Carlton's constitutional claims based on this reasoning.

¶26 A similar analysis applies to the tort claims asserted in Mr. Carlton's Amended Petition, which the district court also appears to have dismissed due primarily to a lack of standing. In essence, the district court reasoned that because Mr. Carlton failed to comply with the Act, he did not have any rights to the child to begin with and thus could not show damages due to Ms. Brown's and Adoption Center's allegedly tortious interference with those rights. While it may be true that Mr. Carlton did not have any rights to the child due to his failure to comply with the Act, the district court's argument presupposes that the Act constitutionally extinguished the rights that Mr. Carlton claims were violated by Ms. Brown's and Adoption Center's allegedly tortious conduct. But given that the district court had not previously analyzed the constitutionality of the Act, this conclusion was premature and

---

[14] *See In re T.B.*, 2010 UT 42, ¶ 31, 232 P.3d 1026 (discussing this right, as recognized in *Lehr v. Robertson*, 463 U.S. 248 (1983)).

therefore erroneous. The district court should have first determined whether the statute constitutionally deprived Mr. Carlton of the rights that were allegedly violated by the tortious conduct. Only then, if the district court decided against him on the constitutional claims, would it be justified in dismissing Mr. Carlton's tort claims due to an inability to allege a redressable injury.

¶27 These errors notwithstanding, for the reasons stated below we agree with the district court's ultimate conclusion that, given the current state of the pleadings, Mr. Carlton lacks standing to bring a constitutional challenge to the Act.

### III.  MR. CARLTON LACKS STANDING TO ASSERT THE CONSTITUTIONAL CLAIMS BECAUSE HIS INJURY IS NOT REDRESSABLE BY THIS COURT DUE TO THE ABSENCE OF THE CHILD'S ADOPTIVE PARENTS

¶28  In his Amended Petition, Mr. Carlton raised a number of arguments aimed at proving the unconstitutionality of the Act, including both facial and as applied arguments based on violations of procedural and substantive due process, equal protection, the "open courts" provision of Utah's constitution, and vagueness. But Mr. Carlton lacks standing to assert these claims because his injury cannot be redressed by this court unless the Adoptive Parents are parties to this case. This is so because Mr. Carlton's constitutional arguments and proposed remedies do not implicate the rights of either Ms. Brown or Adoption Center—they implicate the rights of the Adoptive Parents. So despite the fact that Mr. Carlton's constitutional claims may have merit,[15] he lacks standing to bring them because they are not redressable by this court until the Adoptive Parents are added to this action.

¶29 Although we recognize that we are not bound by the federal constitution's "case or controversy" requirement, we have repeatedly recognized that a "justiciable controversy" is the

---

[15] Of particular potential merit is Mr. Carlton's contention, which he clarified at oral argument, that the Act's imposition of a deadline on out-of-state fathers whose home states impose no such deadline is a violation of due process.

"keystone" of our judicial framework.[16] Indeed, we have stated that the constitutional term

> 'judicial power of courts' is generally understood to be the power to hear and determine controversies between adverse parties and questions in litigation. Such core judicial powers include 'the authority to hear and determine justiciable controversies' as well as 'the authority to enforce any valid judgment, decree or order.'[17]

But "[i]n the absence of any justiciable controversy between adverse parties, the courts are without jurisdiction."[18]

¶30 Thus, in order for us to retain jurisdiction over this appeal, Mr. Carlton is required to show that there is a justiciable controversy before us. The concept of "justiciability" implicates various categories of cases and doctrines that impose limits on our jurisdiction, including advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions.[19] For example, with respect to ripeness we have recently observed that "[i]n order to constitute a justiciable controversy, a conflict over the application of a legal provision must have sharpened into an actual or imminent clash of legal rights and obligations between the parties thereto."[20]

¶31 In this case, we agree with the district court's ultimate conclusion that Mr. Carlton lacked standing to bring his constitutional claims, although we reach that conclusion by a

---

[16] *Shipman v. Evans*, 2004 UT 44, ¶¶ 32–33, 100 P.3d 1151, *abrogated on other grounds by Utahns For Better Dental Health-Davis, Inc. v. Davis Cnty. Clerk*, 2007 UT 97, 175 P.3d 1036.

[17] *Salt Lake City v. Ohms*, 881 P.2d 844, 849 (Utah 1994) (emphasis omitted) (internal citation omitted); *see also Timpanogos Planning & Water Mgmt. Agency v. Cent. Utah Water Conservancy Dist.*, 690 P.2d 562, 569 (Utah 1984).

[18] *Williams v. Univ. of Utah*, 626 P.2d 500, 503 (Utah 1981).

[19] *See Wylie v. Idaho Transp. Bd.*, 253 P.3d 700, 705 (Idaho 2011).

[20] *Carter v. Lehi City*, 2012 UT 2, ¶ 93, 269 P.3d 141 (internal quotation marks omitted).

different road. As noted above, "standing" comprises three components: injury, causation, and redressability.[21] Although Mr. Carlton has adequately shown the former two, he cannot show the latter because "redressability" requires that the injury be "redressable by a favorable ruling."[22]

¶32 Unfortunately, the district court prevented Mr. Carlton from joining the Adoptive Parents in this case when it denied his Motion for Leave to File Second Amended Petition. Consequently, Mr. Carlton lacks standing to bring these claims because his injury—the termination of his parental rights—is not redressable by a favorable ruling from this court. This is so because even if we were to agree with Mr. Carlton's arguments against the constitutionality of the Act, we simply could not grant the relief he requests, which is that his parental rights to the child be reinstated and the adoption overturned. Neither Adoption Center nor Ms. Brown has any rights to relinquish,[23] and we certainly do not have the authority to infringe upon the Adoptive Parents' rights to the child since they are not parties to this proceeding.[24] Because of the Adoptive Parents' absence, we cannot grant the relief Mr. Carlton seeks. Therefore, his injury is not redressable, and consequently he lacks standing to assert the constitutional challenges set forth in his Amended Petition.

¶33 But despite the fact that we agree with the district court's conclusion that Mr. Carlton lacks standing to assert the constitutional claims as they are presently pled, we nevertheless reverse its decision to dismiss those claims because we conclude that the district court erroneously denied Mr. Carlton's Motion for Leave to File Second Amended Petition. The district court denied this motion on the basis of futility, but it is clear from the face of

---

[21] *Brown v. Dep't. of Natural Res.*, 2010 UT 14, ¶ 17, 228 P.3d 747.

[22] *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).

[23] *See State v. Sims*, 881 P.2d 840, 841 (Utah 1994) (dismissing a case for lack of jurisdiction because even if the court granted the relief requested "it would have no legal effect on the parties").

[24] *Fink v. Miller*, 896 P.2d 649, 654 n.6 (Utah Ct. App. 1995) (observing that the "trial court exceeded the bounds of its authority by directing the actions of a nonparty").

his proposed Second Amended Petition that Mr. Carlton was attempting to add the Adoptive Parents, which, as we just noted, would have granted him standing to bring the constitutional claims. Hence, we conclude that the district court erred when it determined that the motion to amend was futile.

¶34 Mr. Carlton correctly notes that, under rule 15(a) of the Utah Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." And in his Motion for Leave to File Second Amended Petition, Mr. Carlton argued, among other things, that no prejudice would result from the amendment because a trial had not yet been scheduled and no formal discovery had been conducted. This argument was not refuted by Adoption Center in its opposition to Mr. Carlton's motion. We conclude that pursuant to rule 15(a), the district court should have granted Mr. Carlton leave to amend. Accordingly, we reverse the district court's denial of this motion and remand the case with the instruction that the district court grant Mr. Carlton leave to amend his petition. And because it is clear that Mr. Carlton's Second Amended Petition would have cured the standing issue discussed above, we also reverse the district court's dismissal of the constitutional claims and remand this case to the district court for further proceedings consistent with this opinion.

## IV. EXCEPT FOR MR. CARLTON'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ADOPTION CENTER, THE DISTRICT COURT PROPERLY DISMISSED MR. CARLTON'S TORT CLAIMS FOR FAILURE TO STATE A CLAIM

¶35 In his Amended Petition, Mr. Carlton asserted six tort claims against Adoption Center and Ms. Brown. These claims were for (1) fraud, (2) tortious interference with parental rights, (3) pattern of unlawful activity, (4) civil conspiracy, (5) intentional infliction of emotional distress (IIED), and (6) negligent infliction of emotional distress. In its order, the district court dismissed all of these claims due to lack of standing, or, in the alternative, for failure to state a claim upon which relief could be granted. We affirm the district court's dismissal of all the tort claims for failure to state a claim upon which relief could be granted, except for the claim for IIED against Adoption Center. As discussed below, because Mr. Carlton has failed to properly serve Ms. Brown with the Amended Complaint, either personally or via alternative service, the district court's dismissal of the IIED claim against

Ms. Brown was proper. Accordingly, we affirm the dismissal of this claim. But we reverse the district court's dismissal of Mr. Carlton's IIED claim against Adoption Center. The district court's ground for dismissal of that claim was Mr. Carlton's failure to establish parental rights to the child. Our opinion renders this ground inadequate, however, because the question of whether Mr. Carlton may be able to establish his parental rights depends upon the outcome of the constitutional challenges that were also erroneously dismissed by the district court. Accordingly, we reverse the dismissal of Mr. Carlton's IIED claim against Adoption Center and remand this case for further proceedings consistent with this opinion.

### A. Mr. Carlton's Fraud Claim Fails Because There Was No Detrimental Reliance

¶36 The district court dismissed Mr. Carlton's fraud claims due to his failure to plead fraud with particularity, and because even if the cause of action was properly pled, Mr. Carlton had not suffered any injury, since the fraud occurred *after* Ms. Brown had already relinquished her parental rights to the child. Mr. Carlton argues that the district court's dismissal was improper because "[t]here was considerable evidence of . . . fraud in the case." We disagree and affirm the district court's dismissal, except that we affirm the dismissal without prejudice.

¶37 In order to properly assert a claim for fraud, the plaintiff must show the following nine elements:

> (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.[25]

---

[25] *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 53 n.38, 201 P.3d 966 (emphasis omitted) (internal quotation marks omitted).

¶38 Additionally, rule 9(b) of the Utah Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This means that "a complaint cannot survive dismissal by pleading mere conclusory allegations unsupported . . . by a recitation of relevant surrounding facts."[26] In other words, "the mere recitation by a plaintiff of the elements of fraud in a complaint does not satisfy the particularity requirement"[27]—only "a sufficiently clear and specific description of the facts underlying the [plaintiff's] claim of [fraud] will satisfy the requirements of rule 9(b)."[28]

¶39 We agree with the district court's determination that even if the allegations in Mr. Carlton's Amended Petition were sufficient to satisfy the requirement to plead fraud with particularity, his fraud claim would still fail because he has failed to plead detrimental reliance on such statements. Although Mr. Carlton alleges that his failure to file a timely petition to establish paternity was due to Ms. Brown's fraud, it is undisputed that the fraudulent statements he identifies occurred *after* Ms. Brown had already relinquished her rights to Adoption Center. Thus, by the time the statements were made, Mr. Carlton's petition would still have been untimely under Utah law, and thus he cannot show detrimental reliance. Accordingly, we affirm the district court's dismissal of this claim, but without prejudice.

### B.     *Tortious Interference with Parental Rights*

¶40 Mr. Carlton acknowledges that there currently is no cause of action for tortious interference with parental rights but nevertheless urges us to recognize that cause of action. We decline to do so for several reasons.

¶41 Mr. Carlton has not given us adequate reason to adopt a new tort. While it may be true that we have "the ability and

---

[26] *State v. Apotex Corp.*, 2012 UT 36, ¶ 21, 282 P.3d 66 (alteration in original) (internal quotation marks omitted).

[27] *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35.

[28] *Hill v. Allred*, 2001 UT 16, ¶ 14, 28 P.3d 1271 (first alteration in original) (internal quotation marks omitted).

discretion to fashion a remedy where one may not already exist, based on sound principles of fairness and equity," Mr. Carlton does not cite to any legal authority for his position, does not develop any preexisting authority, nor does he adequately demonstrate how the remedies that are currently available to him are inadequate to address his alleged injuries. In fact, Mr. Carlton does not even propose or discuss any legal standard for the tort he wishes us to adopt. Instead, he merely cites to a Virginia Supreme Court decision wherein the tort was recognized, referring to its "high persuasive value" but then fails to indicate why we should view it as persuasive or adopt the standard used therein. Therefore, due primarily to the inadequacy of Mr. Carlton's brief, we decline to consider whether this tort ought to be recognized in Utah and affirm the district court's dismissal of this claim, with prejudice.

### C. Pattern of Unlawful Activity Claim

¶42 Mr. Carlton argues that Adoption Center is liable for a pattern of unlawful activity because it "intentionally keep[s birth fathers] 'in the dark' about adoption plans" and "felonious[ly gifts] apartment, rent, utilities, various amenities, and most astonishingly 'post placement' case money of $3,000 - $4,000 to birth mothers." The district court dismissed this claim for failure to state a claim upon which relief could be granted. We affirm the district court's dismissal, but without prejudice.

¶43 Under Utah's Pattern of Unlawful Activity Act (UPUA),[29] the plaintiff must show injury due to a "pattern of unlawful activity," which is defined by UPUA as follows:

> 'Pattern of unlawful activity' means engaging in conduct which constitutes the commission of at least three *episodes* of unlawful activity, which episodes are not isolated, but have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics. Taken together, the episodes shall demonstrate continuing unlawful

---

[29] UTAH CODE §§ 76-10-1601–76-10-1609.

conduct and be related either to each other or to the enterprise.[30]

¶44 With respect to this definition, we have clarified that "[t]he proper test for determining whether there was a pattern of unlawful activity is whether there was 'a series of related predicates extending over a substantial period of time' or a demonstrated threat of continuing unlawful activity and not whether there were multiple schemes."[31]

¶45 Additionally, UPUA requires plaintiffs to plead all claims with particularity: "In all actions under this section, the elements of each claim or cause of action shall be stated with particularity against each defendant."[32] This requirement is imposed "in order for the court to determine whether the facts as pleaded are sufficient to show that the alleged activity would be illegal in Utah and would fall into one of the [statute's] enumerated categories."[33] Accordingly, we affirm the district court's dismissal of this claim for failure to state a claim, but dismiss it without prejudice.

¶46 The district court correctly observed that Mr. Carlton's Amended Petition failed to (1) plead his claim for pattern of unlawful activity with particularity and (2) demonstrate "at least three episodes" of unlawful activity. Indeed, on appeal Mr. Carlton merely alleges that Adoption Center is involved in an "ill-conceived scheme to prevent birth fathers from exercising their parental rights and otherwise timely objecting to the adoption of their children." He does not state with specificity who, when, where, or what has happened in furtherance of this scheme, nor has he shown how this activity satisfies UPUA's definition of "unlawful activity."[34]

---

[30] *Id*. § 76-10-1602(2) (emphasis added).

[31] *Hill v. Estate of Allred*, 2009 UT 28, ¶ 41, 216 P.3d 929 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)).

[32] UTAH CODE § 76-10-1605(7).

[33] *Holbrook v. Master Prot. Corp.*, 883 P.2d 295, 302 (Utah Ct. App. 1994) (internal quotation marks omitted).

[34] UTAH CODE § 76-10-1602(4)(a)–(jjjj).

¶47 The district court also correctly noted that even if Mr. Carlton had adequately pled this claim with particularity, the actions he complains about were not unlawful. Mr. Carlton alleges that Adoption Center is guilty of fraud for keeping birth fathers "in the dark," but this allegation ignores the fact that Utah law does not impose a duty upon Adoption Center to inform birth fathers who do not take action to preserve their right to notification of a pending adoption. Furthermore, Mr. Carlton's second suggestion, namely that Adoption Center "feloniously" gives support to birth mothers, is also patently false since the Act permits Adoption Center to pay for certain expenses.[35] For these reasons, the district court correctly dismissed Mr. Carlton's claim for pattern of unlawful activity, and, accordingly, we affirm its dismissal, without prejudice.

### D. Civil Conspiracy Claim

¶48 With respect to his civil conspiracy claim, Mr. Carlton argues that "[i]n light of the pleadings and evidence presented . . . the Court [should] take action in this case to reverse the lower court." Unfortunately, he does not inform us to which pleadings or evidence he is referring. Nor does he set forth the legal elements of this cause of action using relevant case law or show how the district court erred in assessing the facts of this case in light of those elements. In short, Mr. Carlton does not, in any fashion, engage the district court's analysis of this cause of action. Accordingly, we refuse to consider this claim on appeal due to inadequate briefing and affirm the district court's dismissal, without prejudice.

### E. Intentional Infliction of Emotional Distress

¶49 Mr. Carlton argues that the district court erred in dismissing his claims for IIED against both Ms. Brown and Adoption Center. We agree with Mr. Carlton with respect to his claim asserted against Adoption Center, but disagree with respect to the claim asserted against Ms. Brown.

¶50 In order to state a claim for IIED, a plaintiff must show that the defendant

---

[35] See id. § 76-7-203(1)(a).

intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.[36]

¶51 Furthermore, we have also observed that "[t]o be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair."[37] And finally, "[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."[38]

1. The District Court's Dismissal of the IIED Claim Brought Against Ms. Brown Was Proper Because She Was not Served with the Amended Petition

¶52 We conclude that the district court was correct to dismiss Mr. Carlton's IIED claim against Ms. Brown because she was not properly served with the Amended Petition. "For a court to acquire jurisdiction, there must be a proper issuance and service of summons."[39] In his brief, Mr. Carlton admits that Ms. Brown has not been served with the Amended Petition: "Counsel for [Adoption Center] stated to the undersigned counsel in an email that [Adoption Center's] social worker spoke with Brown on May 24, 2011, and Brown confirmed that she had not yet been served with the amended petition." Mr. Carlton then states that

---

[36] *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 55, 116 P.3d 323 (internal quotation marks omitted).

[37] *Cabaness v. Thomas*, 2010 UT 23, ¶ 38, 232 P.3d 486 (internal quotation marks omitted).

[38] *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 52, 194 P.3d 956 (internal quotation marks omitted).

[39] *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 10, 100 P.3d 1211.

[s]ubsequent to [Adoption Center's] communication with Brown, the Lycoming County Sheriff in Pennsylvania had [sic] been unable to serve Brown, on numerous occasions, even though her car was present at her home, where she was previously served with the original Verified Petition, and where she appeared to be home, peering out the window, but refused to come to the door. Efforts to serve Brown with the Amended Verified Petition were continuing for some time.

¶53 Despite his belief that Ms. Brown may have been avoiding service of the Amended Petition, Mr. Carlton did not file a motion "requesting an order allowing service by publication or by some other means"[40] and has not demonstrated that service has been effectuated on Ms. Brown, either personally or by court-ordered alternative means.[41] Therefore, the district court's dismissal of this claim was justified due to ineffective service, and, accordingly, we affirm its dismissal, but without prejudice.

2. Because We Conclude that Mr. Carlton's Constitutional Challenges Were Erroneously Dismissed, the District Court's Reason for Dismissing the IIED Claim Against Adoption Center Is Now Inadequate

¶54 The district court stated its primary reason for dismissing Mr. Carlton's IIED claim against Adoption Center as follows:

Because [Mr.] Carlton did not establish his parental rights to the child prior to the mother's relinquishment of all her parental rights, [Mr.] Carlton was not injured by the adoption, nor was he injured by the acts of the Adoption Center . . . . [Mr.] Carlton failed to take timely action prior to the adoption to demonstrate that he intended to assume his parental responsibilities. Therefore,

---

[40] UTAH R. CIV. P. 4(d)(4)(A).

[41] *See Jackson Constr. Co.*, 2004 UT 89, ¶ 22 ("Once alternative service is authorized, it must be reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action to the extent reasonably possible or practicable." (internal quotation marks omitted)).

[Mr.] Carlton's [tort] claims are without merit, and Adoption Center's motion [to dismiss] is granted.

Because we today reverse the district court's dismissal of Mr. Carlton's constitutional claims, the question of whether he may be able to "establish his parental rights to the child" remains open. Accordingly, we reverse the district court's dismissal of Mr. Carlton's claim for IIED against Adoption Center.

### F. *Negligent Infliction of Emotional Distress*

¶55 Finally, Mr. Carlton argues that the district court's dismissal of his claim for negligent infliction of emotional distress against Adoption Center and Ms. Brown was in error. We disagree.

¶56 In order to prevail on a claim for negligent infliction of emotional distress, the plaintiff must show the following:

> If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and (b) from facts known to him, should have realized that the distress, if it were caused, might result in illness or bodily harm.[42]

¶57 We have held previously that it is not enough for a plaintiff to merely allege emotional distress. Instead, she must prove that distress by means of severe physical or mental manifestations.[43]

---

[42] *Anderson Dev. Co.*, 2005 UT 36, ¶ 57 (internal quotation marks omitted).

[43] *E.g.*, *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 975 (Utah 1993) (observing that "either physical or mental illness may support the [negligent infliction of emotional distress] cause of action" and that the physical or mental illness must be such that "a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case" (alteration in original) (internal quotation marks omitted)).

¶58 Here, we conclude that the district court correctly dismissed Mr. Carlton's claim for negligent infliction of emotional distress because, in addition to the fact that Ms. Brown was not properly served with the Amended Petition, Mr. Carlton failed to allege that the distress he claimed to have suffered manifested itself through severe mental or physical symptoms. Therefore, we affirm the district court's dismissal of this cause of action for failure to state a claim but dismiss it without prejudice.

## V. FOR THE REASONS STATED ABOVE, WE AFFIRM THE DISTRICT COURT'S DENIAL OF MR. CARLTON'S REQUEST FOR DECLARATORY RELIEF

¶59 In his Amended Petition, Mr. Carlton requested "that an order issue declaring any previous termination of [Mr. Carlton's] parental rights, and/or any adoption to be set aside, and further that any statute upon which [Adoption Center and Ms. Brown] may rely to ostensibly justify their wrongful conduct . . . be declared unconstitutional." As justification for such an order, Mr. Carlton asserted the same arguments mentioned above, namely the facial and as applied unconstitutionality of the Act, violations of due process and equal protection, violation of Utah's constitutional open courts provision, and vagueness. As set forth above, however, we cannot reach the merits of these claims until the child's adoptive parents are parties to this action, since their rights would be directly or indirectly implicated by the grant of declaratory relief Mr. Carlton seeks. Therefore, due process requires that the Adoptive Parents be given the opportunity to be heard with respect to this issue. Accordingly, we decline to address the merits of this claim and remand it to the district court for further proceedings consistent with this opinion.

## CONCLUSION

¶60 For the foregoing reasons, we reverse the district court's dismissal of Mr. Carlton's constitutional challenges to the Act. But we affirm the district court's dismissal of all of the tort claims asserted in the Amended Petition for failure to state a claim, with the exception of Mr. Carlton's claim for intentional infliction of emotional distress against Ms. Brown and Adoption Center. Although Mr. Carlton adequately pled the former, because he has not yet served Ms. Brown with the Amended Petition we must dismiss this claim for lack of jurisdiction. And since we now reverse the district court's dismissal of Mr. Carlton's constitutional claims, the dismissal of his claim for IIED against

Opinion of the Court

Adoption Center must also be reversed, for the reasons stated above. We now remand this case to the district court for further proceedings consistent with this opinion.

––––––––––––